1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11     CAROLYN PARAGAS CORPUZ,                    No.  2:19-cv-02401 AC

12                    Plaintiff,

13          v.                                    **ORDER**

14     ANDREW M. SAUL, Commissioner of
       Social Security,
15
                      Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19     ("Commissioner"), denying her application for disability insurance benefits ("DIB") under

20     Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow,

21     plaintiff's motion for summary judgment will be GRANTED, and defendant's cross-motion for

22     summary judgment will be DENIED.  The matter will be reversed and remanded to the

23     Commissioner for further proceedings.

24     ////

25     ////

26

27     [1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
       who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New
       York, 476 U.S. 467, 470 (1986).
28

1                                           I.   PROCEDURAL BACKGROUND

2            Plaintiff applied for DIB on September 12, 2017.  Administrative Record ("AR") 165-71.[2]

3 The disability onset date was alleged to be November 4, 2014.  AR 165.  The application was

4 disapproved initially and on reconsideration.  AR 94-98, 100-05.  On October 9, 2019, ALJ

5 Daniel G. Heely presided over the hearing on plaintiff's challenge to the disapprovals.  AR 39-65

6 (transcript).  Plaintiff, who appeared represented by Luann Wood, was present at the hearing.  AR

7 39.  Kathleen Spencer, a Vocational Expert ("VE"), also testified.  Id.

8            On December 18, 2018, the ALJ found plaintiff "not disabled" under Sections 216(i) and

9 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d).  AR 18-31 (decision), 32-36 (exhibit

10 list).  On September 21, 2019, the Appeals Council denied plaintiff's request for review, leaving

11 the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 7-12

12 (decision and additional exhibit list).

13            After receiving an extension of time to file a civil action, plaintiff filed this action on

14 November 27, 2019.  ECF No. 1; see 42 U.S.C. § 405(g).  The parties consented to the

15 jurisdiction of the magistrate judge.  ECF No. 19.  The parties' cross-motions for summary

16 judgment, based upon the Administrative Record filed by the Commissioner, have been fully

17 briefed.  ECF Nos. 15 (plaintiff's summary judgment motion), 18 (Commissioner's summary

18 judgment motion), 21 (plaintiff's reply).  The Commissioner also filed a motion to file a sur-

19 reply, which will be denied because it is unnecessary.  ECF No. 22.

20                                           II.   FACTUAL BACKGROUND

21            Plaintiff was born in 1972, and accordingly was, at age 42, a younger person under the

22 regulations, on the alleged disability onset date.[3]  AR 66.  Plaintiff has a limited education and

23 can communicate in English.  AR 183, 198.  Plaintiff last worked as a medical assistant from

24 April 2000 through November 2014.

25 ////

26 ////

27

28    [2]  The AR is electronically filed at ECF Nos. 11-3 to 11-11 (AR 1 to AR 487).
   [3]  See 20 C.F.R. § 404.1563(c) ("younger person").

1                                             III.  LEGAL STANDARDS

2          The Commissioner's decision that a claimant is not disabled will be upheld "if it is

3 supported by substantial evidence and if the Commissioner applied the correct legal standards."

4 Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

5 Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  Andrews

6 v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

7          Substantial evidence is "more than a mere scintilla," but "may be less than a

8 preponderance."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such

9 evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.

10 Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the

11 record can constitute substantial evidence, only those 'reasonably drawn from the record' will

12 suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

13 Although this court cannot substitute its discretion for that of the Commissioner, the court

14 nonetheless must review the record as a whole, "weighing both the evidence that supports and the

15 evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of HHS,

16 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

17 court must consider both evidence that supports and evidence that detracts from the ALJ's

18 conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

19          "The ALJ is responsible for determining credibility, resolving conflicts in medical

20 testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

21 Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of

22 which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v. Barnhart,

23 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the

24 ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  Orn

25 v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

26 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

27 evidence that the ALJ did not discuss").

28 ////

1    The court will not reverse the Commissioner's decision if it is based on harmless error,

2  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

3  ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

4  2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

5  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

6                                IV.  RELEVANT LAW

7    Disability Insurance Benefits and Supplemental Security Income are available for every

8  eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI).  Plaintiff

9  is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically

10  determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987)

11  (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

12    The Commissioner uses a five-step sequential evaluation process to determine whether an

13  applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);

14  Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation

15  process to determine disability" under Title II and Title XVI).  The following summarizes the

16  sequential evaluation:

17    Step one: Is the claimant engaging in substantial gainful activity?  If
     so, the claimant is not disabled.  If not, proceed to step two.
18
   20 C.F.R. § 404.1520(a)(4)(i), (b).
19
       Step two: Does the claimant have a "severe" impairment?  If so,
20     proceed to step three.  If not, the claimant is not disabled.

21  Id. §§ 404.1520(a)(4)(ii), (c).

22       Step three: Does the claimant's impairment or combination of
         impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404,
23       Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to
         step four.
24
   Id. §§ 404.1520(a)(4)(iii), (d).
25
       Step four: Does the claimant's residual functional capacity make him
26     capable of performing his past work?  If so, the claimant is not
       disabled.  If not, proceed to step five.
27
   Id. §§ 404.1520(a)(4)(iv), (e), (f).
28
                                       4

1    Step five: Does the claimant have the residual functional capacity
     perform any other work?  If so, the claimant is not disabled.  If not,
2    the claimant is disabled.

3    Id. §§ 404.1520(a)(4)(v), (g).

4          The claimant bears the burden of proof in the first four steps of the sequential evaluation

5    process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

6    disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the

7    sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not

8    disabled and can engage in work that exists in significant numbers in the national economy."  Hill

9    v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

10                              V.  THE ALJ's DECISION

11         The ALJ made the following findings:

12         1. The claimant last met the insured status requirements of the Social
           Security Act through December 31, 2019.
13
           2. [Step 1] The claimant has not engaged in substantial gainful
14         activity since November 4, 2014, the alleged onset date (20 CFR
           404.1571 *et seq.*).
15
           3. [Step 2] The claimant has the following severe impairments:
16         degenerative disc disease – lumbar spine, unspecified depressive
           disorder, and generalized anxiety disorder (20 CFR 404.1520(c)).
17
           4. [Step 3] The claimant does not have an impairment or combination
18         of impairments that meets or medically equals the severity of one of
           the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
19         (20 CFR 404.1520(d), 404.1525 and 404.1526).

20         5.  [Residual  Functional  Capacity  ("RFC")]  After  careful
           consideration of the entire record, the undersigned finds that the
21         claimant has the residual functional capacity to perform light work
           as  defined  in  20  CFR  404.1567(b)  except  she  is  limited  to
22         understanding, remembering and carrying out simple instructions
           and making simple work-related decisions; able to tolerate a low
23         level of work pressure, defined as work with no multitasking or
           detailed job tasks; able to work at a consistent pace throughout the
24         workday, but not at a production-rate pace where each task must be
           performed within a strict time deadline such as meeting a quick
25         turnaround with no tolerance for discrepancies; occasional contact
           with coworkers and can respond appropriately to criticism from
26         supervisors; occasional interaction with the public; never climb
           ladders, ropes or scaffolds; occasionally climb ramps or stairs;
27         occasionally balance, stoop, kneel, crouch or crawl; never work
           around  hazards  (such  as  moving,  dangerous  machinery  or
28         unprotected heights; and no operation of motor vehicle.

                                       5

6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. [Step 5] The claimant was born [in 1972] and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. [Step 5, continued] The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are job that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from November 4, 2014, through the date of this decision (20 CFR 404.1520(g)).

AR 23-31.  As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the

Act. AR 31.

## VI.  ANALYSIS

Plaintiff alleges that the ALJ erred in three ways: (1) by failing to find plaintiff's

fibromyalgia a "medically determinable" and "severe" impairment at step two; (2) by assessing

an RFC that is not supported by the substantial evidence of record, by failing to properly credit an

examining physician opinion and failing to credit plaintiff's subjective testimony; and (3) by

failing to evaluate whether plaintiff's degenerative disease equaled Listing 1.04A at step three.

ECF No. 15 at 17-32.

### A.  The ALJ Did Not Err at Step Two

Plaintiff argues that the ALJ erred at step two of the sequential evaluation process by

failing to find that plaintiff's fibromyalgia constitutes a medically determinable and severe

impairment.  ECF No.  15 at 17.  The undersigned disagrees.  The step-two inquiry is a de

minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273,

1290 (9th Cir. 1996).  The purpose is to identify claimants whose medical impairment is so slight

1    that it is unlikely they would be disabled even if age, education, and experience were taken into

2    account.  Bowen, 482 U.S. at 153.

3          At step two of the sequential evaluation, the ALJ determines which of claimant's alleged

4    impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c).  "An impairment is not

5    severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no

6    more than a minimal effect on the ability to do basic work activities.'"  Webb v. Barnhart, 433

7    F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96–3p (1996)).  The step-

8    two severity determination is "merely a threshold determination of whether the claimant is able to

9    perform his past work.  Thus, a finding that a claimant is severe at step two only raises a prima

10    facie case of a disability."  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

11          The ALJ's step-two analysis in this case discussed plaintiff's fibromyalgia, found that

12    plaintiff's limited history of fibromyalgia did not amount to a medically determinable

13    impairment, and noted that despite this, plaintiff's symptoms of chronic pain have been

14    considered in connection with her other severe impairments.  AR 24.  This is sufficient; even if

15    the ALJ had failed to address plaintiff's fibromyalgia at all there would be no harmful error so

16    long as the ALJ found at least one severe impairment.  Here, because the ALJ found that plaintiff

17    had at least one severe impairment, plaintiff was not prejudiced by any arguable step two error.

18    See Burch, 400 F.3d at 682 ("Assuming without deciding that [the] omission [of an impairment]

19    constituted legal error, it could only have prejudiced Burch in step three ... or step five ... because

20    the other steps, including this one, were resolved in her favor.").  Here, step two was decided in

21    plaintiff's favor, and the ALJ did consider all of plaintiff's alleged impairments in the RFC

22    analysis.  AR 24.  Because all impairments were considered in the RFC, the determination of

23    disability was not impacted by any omission at step two.  There is accordingly no error supporting

24    remand.

25          B.  The RFC Is Not Supported by Substantial Evidence: Physician Opinion Evaluation

26          Plaintiff alleges that the RFC is not supported by substantial evidence, in large part

27    because "the only examining RFC of record, from CE, Dr. McMillan, substantially limited Ms.

28    Corpuz's RFC to a less than sedentary level by determining that Ms. Corpuz was limited to

7

standing, sitting and walking for an hour at a time, for four hours per day"—which is less than

sedentary.  ECF No. 15 at 23.

        1.     <u>The Medical Evidence</u>

The ALJ considered the medical opinions of (1) State agency physicians Dr. James

Wright and Dr. E. Trias, and (2) examining physician Dr. Eugene McMillan.  AR 29.

        a.     <u>Opinions of Drs. Wright and Trias</u>

State agency reviewing physicians Dr. Wright and Dr Trias reviewed plaintiff's medical

records and issued opinions regarding plaintiff's limitations.  Dr. Wright found that plaintiff could

lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk for 6 hours in

an 8-hour workday; occasionally climb ramps and stairs; occasionally climb ladders, ropes, and

scaffolds, and occasionally stoop, kneel, couch or crawl.  AR 66-78.  Dr. Trias reviewed the

opinion and found that claimant was limited to medium exertion with postural limitations, though

no specific postural limitations were given.  AR 80-92.  The ALJ found these opinions

unpersuasive because they did not consider medical evidence presented later in the disability

determination process or the hearing testimony, and because they did not adequately consider

plaintiff's subjective complaints.  AR 29.

        b.     <u>Opinion of Dr. McMillan</u>

Dr. Eugene McMillian conducted a consultative physical exam of plaintiff in October of

2017 at the request of the Commissioner.  AR 332-37.  Dr. McMillan noted that during the exam

plaintiff did not use an ambulatory aid but frequently shifted positions from sitting to standing.

AR 334.  He diagnosed chronic pain disorder, degenerative disease of the lumbar spine, and

migraine headaches.  AR 335.  Dr. McMillan limited plaintiff to standing and walking "for an

hour at a time for at least four hours per day.  Sitting for an hour at a time for at least four hours

per day.  She would be able to engage in activities that require stooping kneeling crouching for

approximately one third of a workday."  Id.  No limitations were assessed with respect to hearing,

seeing, speaking, reaching in all directions, fine or gross motor, or environmental limitations

related to fermetures, chemicals, or dust.  Id.  The ALJ found the opinion unpersuasive because it

was overly restrictive as to the sit/stand/walk limitations and under-restrictive in the postural and

1    environmental limitations.  AR 29.  The ALJ stated that the overly restrictive sit/stand/walk

2    limitations were not supported by the evidence of record.  Id.

3                2.   Principles Governing the ALJ's Consideration of Medical Opinion Evidence

4          The parties debate the standard that applies to the ALJ's weighing of medical opinions, an

5    issue that has been impacted by regulatory amendments promulgated by the Social Security

6    Administration ("SSA") for cases filed after March 27, 2017.  The question is whether the

7    amended regulations invalidate the treating physician rule ("TPR") that has long governed the

8    consideration of treating physician opinions in the Ninth Circuit.

9          The TPR provides that "those physicians with the most significant clinical relationship

10   with the Plaintiff are generally entitled to more weight than those physicians with lesser

11   relationships.  As such, the ALJ may only reject a treating or examining physician's

12   uncontradicted medical opinion based on clear and convincing reasons.  Where such an opinion is

13   contradicted, however, it may be rejected for specific and legitimate reasons that are supported by

14   substantial evidence in the record."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155,

15   1164 (9th Cir. 2008) (internal citations omitted).  The 2017 regulations promulgated by the SSA

16   eliminate the deference given to treating physicians in this and other Circuits, providing that the

17   SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any

18   medical opinion(s) . . . including those from your medical sources" for claims filed after March

19   27, 2017.  20 C.F.R. § 416.920c (titled "How we consider and articulate medical opinions and

20   prior administrative findings for claims filed on or after March 27, 2017") (hereafter "new

21   regulation").

22         Plaintiff argues that the new regulation does not override prior caselaw establishing the

23   TPR.  ECF No. 21 at 3.  For the reasons now explained, the court rejects this argument and finds

24   that the new regulation displaces contrary, pre-existing caselaw.

25         Regulatory agencies such as the SSA have broad authority to interpret the statutes they are

26   charged with applying, as long as their regulations are not arbitrary and capricious or contrary to

27   ////

28   ////

1   the statute; courts must defer to validly adopted regulatory interpretations.[4]  Chevron, U.S.A., Inc.

2   v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984); Barnhart v. Walton, 535 U.S. 212, 222

3   (2002) (granting Chevron deference to SSA interpretation of duration requirement for disability

4   benefits.)

5          It is a corollary of the Chevron doctrine that, because agencies and not judges are experts

6   in the field, a prior judicial construction of a statute will supersede an agency's contrary

7   interpretation only in very narrow circumstances.  Chevron, 467 U.S. at 865.  The Supreme Court

8   has held that "prior judicial construction of a statute trumps an agency construction otherwise

9   entitled to Chevron deference only if the prior court decision holds that its construction follows

10  from the unambiguous terms of the statute and thus leaves no room for agency discretion."  Nat'l

11  Cable & Telecommunications Ass'n v. Brand X Internet Servs., 545 U.S. 967, 982 (2005).

12         The Ninth Circuit's prior construction of the Social Security Act, recognizing the TPR,

13  was not derived from the unambiguous terms of the statute.  Indeed, there is no such

14  unambiguous statutory language—the statute does not address the weight to be given to any type

15  of medical opinion evidence.  The TPR evolved with the Court's own interpretation of the

16  overarching statutory provision that courts can only overturn a decision if it is unsupported by

17  substantial evidence.  See 41 U.S.C. § 405(g).  In 1975, the Ninth Circuit held that agency

18  adjudicators had to articulate "clear and convincing reasons" for rejecting the "uncontradicted"

19  opinion of a treating doctor, implying a deference to treating sources.  Day v. Weinberger, 522

20  F.2d 1154, 1156 (9th Cir. 1975).  Neither Day nor other early TPR cases cited statutory language

21  mandating such deference.  Rather, like other federal Courts of Appeals, the Ninth Circuit

22  concluded that a decision which ignores evidence provided by a treating physician cannot be

23  supported by substantial evidence.  See Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983).

24         After several other circuits adopted their own versions of the TPR as a rule for weighing

25  medical evidence, the Ninth Circuit followed suit.  In 1983, our Circuit agreed with the Fifth,

26  Sixth and Second Circuits' practice of giving greater weight to the opinions of treating physicians

27

28
[4]  Plaintiff does not argue here that the 2017 regulation is arbitrary or capricious, or that its
promulgation was otherwise invalid.

10

1    because of their "greater opportunity to observe and know that patient as an individual." Murray

2    v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).  As the Supreme Court succinctly explained, "[t]he

3    treating physician rule . . . was originally developed by Courts of Appeals as a means to control

4    disability determinations by administrative law judges under the Social Security Act." Black &

5    Decker Disability Plan v. Nord, 538 U.S. 822, 829 (2003).

6         "In 1991, the Commissioner of Social Security adopted regulations approving and

7    formalizing use of the rule in the Social Security disability program." Id.  In promulgating the

8    SSA rules of 1991, the agency noted that "[n]one of the circuit courts of appeals has held that its

9    treating physician rule is required by the Act or Constitution."  Final Rules, Standards for

10   Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 (1991).  The 2017

11   regulations at issue here changed the Agency's approach.  The Agency is free to make such

12   changes, despite extant caselaw, where the judicial interpretations were not themselves compelled

13   by the statutory language.  See Brand X, supra, 545 U.S. at 982.

14        The Ninth Circuit has recognized that the Social Security Administration may, by

15   regulation, override the court's own prior interpretations of the Act.  In Lambert v. Saul, 980 F.3d

16   1266 (9th Cir. 2020), the Court of Appeals addressed the conflict between its precedent

17   establishing a presumption of continuing disability after a prior disability determination, and the

18   SSA's interpretation of the 1983 Reform Act which found that no such presumption was available

19   under the statute. Id. at 1268.  In deferring to the agency's interpretation despite its own contrary

20   precedent, the Lambert court noted that there are limited circumstances in which a court's own

21   precedent is not controlling, and the court is in fact required to depart from it. Id.  "Those

22   circumstances include the intervening higher authority of an administrative agency's authoritative

23   and reasonable interpretation of a statute." Id.  Finding first that the SSA's interpretation was

24   entitled to deference under Chevron, the Court of Appeals further concluded that "the SSA's

25   authoritative interpretation of the Social Security Act displaces our prior precedents on the issue

26   of a presumption of continuing disability." Id. at 1275.  This conclusion was compelled by Brand

27   X, because the Ninth Circuit precedents adopting the presumption had been based on the

28   persuasive authority of other Circuit Courts of Appeals and not on any mandatory language of the

11

1   statute that foreclosed agency interpretation.  Id.  The TPR was likewise adopted by the Ninth

2   Circuit based on the persuasive authority of other Circuit Courts of Appeals and not on any

3   mandatory language of the statute that foreclosed agency interpretation.  Accordingly, the

4   undersigned concludes that the new regulations regarding the evaluation of medical opinion

5   evidence displace the Ninth Circuit's prior precedents implementing the TPR.

6          Few courts have yet addressed the question whether the 2017 regulations displace the

7   TPR, but Brand X and Lambert provide a clear path.  "Only a judicial precedent holding that the

8   statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for

9   the agency to fill, displaces a conflicting agency construction."  Brand X, 545 U.S. at 982-983.

10  None of the Ninth Circuit's TPR cases constitute such a precedent.  Accordingly, the agency was

11  free to displace the judicially created rule by regulation.  See Lambert, 980 F.3d at 1268, 1275.

12  Because the TPR is inconsistent with the new regulation, the court concludes that the 2017

13  regulations effectively displace or override it.

14         Although the undersigned rejects plaintiff's argument that the Ninth Circuit's TPR

15  caselaw survives the 2017 regulations, this conclusion means only that Dr. McMillan's opinion

16  was not entitled to some degree of deference.  The 2017 regulations do away with presumptively

17  different weights for medical opinions depending on the relationship of the claimant to the

18  evaluating doctor, but impose new articulation requirements for the ALJ's reasoning about the

19  weight given to particular medical opinions.  The court now turns to that issue.

20         3.      The ALJ Improperly Rejected Dr. McMillan's Opinion

21         The ALJ found that Dr. McMillan's opinion was overly restrictive and not supported by

22  the other objective evidence of record, and that Dr. Wright's postural and environmental

23  limitations were more consistent with the totality of medical evidence.  AR 29.  Even under the

24  2017 rules, however, the ALJ's analysis of Dr. McMillan's opinion is deficient.  The ALJ failed

25  to meaningfully address the two key factors identified in the 2017 regulations: consistency and

26  supportability.  20 C.F.R. § 404.1520c(b)(2) ("Therefore, we will explain how we considered the

27  supportability and consistency factors for a medical source's medical opinions or prior

28  administrative medical findings in your determination or decision.").  The unsupported and

12

1    conclusory statement that the sit/stand/walk limitations are "not supported by the other objective

2    evidence of record" is not sufficient.  Without weighting Dr. McMillan's opinion more heavily

3    than the other medical opinions, it remains the case that "an ALJ errs when he rejects a medical

4    opinion or assigns it little weight while doing nothing more than ignoring it, asserting without

5    explanation that another medical opinion is more persuasive, or criticizing it with boilerplate

6    language that fails to offer a substantive basis for his conclusion."  Garrison v. Colvin, 759 F.3d

7    995, 1012–13 (9th Cir. 2014).  The ALJ's rejection of Dr. McMillan's opinion is conclusory and

8    unsupported, and therefore requires remand for reconsideration.

9                    C.  The RFC is Not Supported by Substantial Evidence: Subjective Testimony

10           Plaintiff alleges that the ALJ improperly discredited her subjective pain testimony by (1)

11   failing to use clear and convincing evidence to discredit plaintiff, and (2) effectively requiring

12   plaintiff to produce objective evidence to support her claims of pain and fatigue.  ECF No. 15 at

13   27.  Upon review of the record, the court agrees with plaintiff that the ALJ properly did not

14   properly address her subjective testimony.

15           "To determine whether a claimant's testimony regarding subjective pain or symptoms is

16   credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028,

17   1035–36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented

18   objective medical evidence of an underlying impairment 'which could reasonably be expected to

19   produce the pain or other symptoms alleged.'"  Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d

20   341, 344 (9th Cir. 1991)).  "Second, if the claimant meets this first test, and there is no evidence

21   of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms

22   only by offering specific, clear and convincing reasons for doing so."  Id. (citations omitted)

23   (quotation marks omitted).  Further, "[t]he ALJ may not reject subjective symptom testimony . . .

24   simply because there is no showing that the impairment can reasonably produce the degree of

25   symptom alleged."  Lingenfelter, 504 F.3d at 1035–36 (quoting Smolen, 80 F.3d at 1282); cf.

26   Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("Once the claimant produces medical

27   evidence of an underlying impairment, the Commissioner may not discredit the claimant's

28   testimony as to the severity of symptoms merely because they are unsupported by objective

                                                   13

1    medical evidence." (citing Bunnell, 947 F.2d at 343)).  A claimant is not required to "produce

2    'objective medical evidence of the pain or fatigue itself, or the severity thereof.'"  Garrison v.

3    Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting Smolen, 80 F.3d at 1282).

4           Plaintiff testified that she suffers from migraines three to four times a month that last one

5    to two days; that she takes Relpax and must go to a dark room/quiet space during a migraine (AR

6    51); that the pain in her back radiates into her right leg and right hip and into the right leg; that if

7    she is standing or walking, after 10 minutes she starts to feel sciatica pain, making walking it

8    difficult; that after sitting for 10 minutes, she must stand up and change.  positions; that she can

9    only stand in one spot for groceries in line for less than 10 minutes; that she can only walk a

10   block without having to take a break (AR 52); that she can only carry a gallon of milk with both

11   hands; that she drops things often due to issues with gripping, grasping or reaching; that she gets

12   pain in her right shoulder if she reaching; that she drops things often due to the medication

13   making her "sleepy;" that she has difficulty both with reaching forward and outward (AR 53);

14   that she performs household chores in increments of 20 minutes with a break of 30 minutes to an

15   hour; that she has problems sleeping at night due to anxiety; that she only gets three to four hours

16   of sleep per night; that she wakes up tired (AR 54); that she spends two to three hours a day

17   napping during the day; that she needs to elevate her legs when she has pain; that she lies down

18   and puts her legs up on the ottoman; that she elevates her legs every day for an hour with a

19   heating pad or ice (AR 55); that she has "bad" days where she is not able to do anything at all at

20   least two times a week or 8 days a month; that her "bad" days are caused by "overall pain, lack of

21   sleep, my anxiety, my depression;" that she needs help with personal care; and that her husband

22   helps her bathe due to her back pain.  (AR 56).

23          The ALJ found plaintiff's medically determinable impairments could reasonably be

24   expected to cause the alleged symptoms, but that "her allegations regarding the persistence,

25   intensity, and limiting effects were not entirely consistent with the medical evidence and other

26   evidence in the record for the reasons explained in [the] decision."  AR 27.  The only clear reason

27   provided in the opinion was that "objective evidence, including large gaps in treatment, generally

28   mild physical examination finings, and overall conservative treatment with good response are not

                                                  14

1    consistent with the claimant's allegations of symptoms and limited activities." AR 28. The court

2    agrees with plaintiff that this is not an adequate basis to reject her credibility.

3         Though a lack of medical evidence supporting plaintiff's pain allegations is a factor that

4    the ALJ can consider in the credibility analysis, Burch, 400 F.3d at 681, it is insufficient without

5    more to discredit a plaintiff's symptom testimony. "[T]he Ninth Circuit has repeatedly

6    emphasized that, 'in evaluating the credibility of pain testimony after a claimant produces

7    objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's

8    subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged

9    severity of pain.'" Ondracek v. Comm'r of Soc. Sec., No. 1:15-CV-01308-SKO, 2017 WL

10   714374, at *8 (E.D. Cal. Feb. 22, 2017) (alteration in original) (quoting Burch, 400 F.3d at 680);

11   see also, e.g., Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("[S]ubjective pain

12   testimony cannot be rejected on the sole ground that it is not fully corroborated by objective

13   medical evidence...."). Though the ALJ also mentions in passing conservative treatment and gaps

14   in treatment, no specific correlations are made to tie this conclusory statement to plaintiff's actual

15   pain testimony. The ALJ "must provide clear and convincing reasons to reject a claimant's

16   subjective testimony, by specifically identifying what testimony is not credible and what evidence

17   undermines the claimant's complaints." Garrison, 759 F.3d at 1014 (internal citations omitted).

18   The ALJ did not adequately address plaintiff's subjective testimony and must reconsider the

19   testimony on remand.

20         D.  Plaintiff Has Not Met Her Burden to Show She Meets Listing 1.04A

21         Plaintiff alleges that she put forth evidence in the pre-hearing brief to establish the

22   severity of her multiple disorders equal the listing 1.04A, and the ALJ erred by failing to address

23   the issue of equivalence at step three. ECF No. 15 at 30-31. If a claimant has an impairment or

24   combination of impairments that meets or equals a condition outlined in the "Listing of

25   Impairments," then the claimant is presumed disabled at step three, and the ALJ need not make

26   findings as the claimant's ability to perform past relevant work or any other jobs. 20 C.F.R. §

27   404.1520(d). "An ALJ must evaluate the relevant evidence before concluding that a claimant's

28   impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to

1   support a conclusion that a claimant's impairment does not do so." Lewis v. Apfel, 236 F.3d 503,

2   512 (9th Cir. 2001). "An ALJ is not required to discuss the combined effects of a claimant's

3   impairments or compare them to any listing in an equivalency determination, unless the claimant

4   presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 683

5   (9th Cir. 2005).

6      "Listed impairments are purposefully set at a high level of severity because 'the listings

7   were designed to operate as a presumption of disability that makes further inquiry unnecessary.'"

8   Kennedy v. Colvin, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing Sullivan v. Zebley, 493 U.S. 521

9   (1990)). "For a claimant to show that his impairment matches a listing, it must meet all of the

10  specified medical criteria." Zebley, 493 U.S. at 530. Similarly, "[f]or a claimant to qualify for

11  benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent'

12  to a listed impairment, he must present medical findings equal in severity to all the criteria for the

13  most similar listed impairment. Kennedy, 738 F.3d at 1175. "A claimant cannot qualify for

14  benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted

15  impairment or combination of impairments is as severe as that of a listed impairment." Id. at

16  1176.

17      Listing § 1.04A reads as follows:

18      Disorders of the spine (e.g., herniated nucleus pulposus, spinal
19      arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc
        disease, facet arthritis, vertebral fracture), resulting in compromise
20      of a nerve root (including the cauda equina) or the spinal cord. With:

21      A. Evidence of nerve root compression characterized by neuro-
        anatomic distribution of pain, limitation of motion of the spine,
22      motor loss (atrophy with associated muscle weakness or muscle
        weakness) accompanied by sensory or reflex loss and, if there is
        involvement of the lower back, positive straight-leg raising test
23      (sitting and supine); "[e]vidence of nerve root compression
        characterized by neuro-anatomic distribution of pain, limitation of
24      the motion of the spine, motor loss (atrophy with associated muscle
        weakness or muscle weakness) accompanied by sensory or reflex
25      loss, and if there is involvement of the lower back, positive straight-
        leg raise test (sitting and supine).
26

27  20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04A. Here, at step three and with respect to listing

28  1.04A, the ALJ found that "[w]hile the claimant had evidence of lumbar spinal stenosis and

16

1   degenerative disc disease, she did not have motor loss accompanied by sensory or reflex loss as

2   required to meet listing 1.04A.  Additionally, while there was some evidence of compromise of a

3   nerve root, it did not include the cauda equina as needed to meet 1.04A."  AR 24.

4          The court finds this non-boilerplate analysis to be adequate.  Plaintiff argues that it was

5   error for the ALJ not to expressly address equivalency.  ECF No. 21 at 10.  The court disagrees.

6   Although plaintiff did put forth a pre-hearing brief that asserted her impairments "meet or

7   medically equal listing 1.04," that brief does not specifically address equivalency and does not

8   explain how, despite plaintiff's failure to meet the actual criteria of listing 1.04A, her impairments

9   are equal in severity to the listing.  AR 286-88.  Though plaintiff's brief mentions some reduced

10  motor strength (AR 287), nothing indicates she experienced motor loss with sensory or reflex loss

11  or anything equal in severity to that criteria.  Plaintiff did not present "medical findings equal in

12  severity to *all the criteria* for the most similar listed impairment;" the ALJ did not err.  Kennedy,

13  738 F.3d at 1175.

14          E.  Remand

15          The undersigned agrees with plaintiff that the ALJ's RFC error is harmful and that remand

16  for further proceedings by the Commissioner is necessary.  An error is harmful when it has some

17  consequence on the ultimate non-disability determination.  Stout v. Comm'r, Soc. Sec. Admin.,

18  454 F.3d 1050, 1055 (9th Cir. 2006).  The ALJ's error in this matter was harmful; Dr. McMillan's

19  opinion and plaintiff's testimony, properly considered, may very well result in a more restrictive

20  residual functional capacity assessment, which may in turn alter the finding of non-disability.

21          It is for the ALJ to determine in the first instance whether plaintiff has severe impairments

22  and, ultimately, whether she is disabled under the Act.  See Marsh v. Colvin, 792 F.3d 1170, 1173

23  (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social

24  Security Administration in the first instance, not with a district court").  "Remand for further

25  administrative proceedings is appropriate if enhancement of the record would be useful."

26  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Here, the ALJ failed to properly

27  consider Dr. McMillan's opinion and plaintiff's testimony.  Further development of the record

28  ////

1    consistent with this order is necessary, and remand for further proceedings is the appropriate

2    remedy.

VII.  CONCLUSION

4        For the reasons set forth above, IT IS HEREBY ORDERED that:

5        1.  Plaintiff's motion for summary judgment (ECF No. 15), is GRANTED;

6        2.  The Commissioner's cross-motion for summary judgment (ECF No. 18), is DENIED;

7        3.  The Commissioner's motion to file a sur-reply (ECF No. 22) is DENIED;

8        4.  This matter is REMANDED to the Commissioner for further consideration consistent

9    with this order; and

10       5.  The Clerk of the Court shall enter judgment for plaintiff and close this case.

11   DATED: March 1, 2021

13   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE